UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| GEORGE H. HARVEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:04-CV-241 AS |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

On July 23, 2004, Plaintiff, proceeding *pro se,* filed his complaint alleging medical malpractice. On September 19, 2005, Defendant filed a motion for partial summary judgment. For the following reasons, this Court **RECOMMENDS** that Defendant's motion for partial summary judgment [Doc. No. 44] be **GRANTED**.

**I.     RELEVANT BACKGROUND**

The undisputed facts of this case are that on February 29, 2000, Plaintiff George Harvey went to the Veteran's Administration ("VA") Clinic in Fort Wayne, Indiana.[1] Plaintiff complained of a wart on his left thumb for several months and wanted surgery to remove the wart. Plaintiff was referred to surgery at the VA Hospital where he consulted with Dr. Philip Zeitler. During this consultation, Plaintiff was adamant for a more drastic approach to his

---

[1] In its statement of facts, Defendant cites to portions of Plaintiff's deposition testimony. In his reply, Plaintiff states that his deposition was not proper because he was without aid of counsel and because Defendant did not obtain a court order to take Plaintiff's deposition. While Plaintiff is not entitled to representation in a civil case, Fed. R. Civ. P. 30(a)(2) states that "a party must obtain leave of court...if the person to be examined is confined in prison..." Defendant did not obtain leave of court before conducting Plaintiff's deposition. However, this oversight is of no consequence to Defendant's motion. Although this Court will not use the portions of Plaintiff's deposition to develop the relevant facts of this case, there is adequate material, including Plaintiff's complaint, response, and Defendant's other exhibits, that provide the undisputed facts.

problem, even with regard to ablation, if necessary.  Before conducting the surgery, Dr. Zeitler recorded the following regarding Plaintiff's thumb:

> Distal phalanx left thumb with fungus-like mass. Patient has chronic fungus distal left thumb which did not respond to all treatments. Patient threatened to self amputatue. Has lasted one year.

(VA Records).  On May 10, 2000, Dr. Zeitler conducted the surgery.  After examining Plaintiff's thumb, Dr. Zeitler inspected the thumb and noticed a miserable looking mass that penetrated and went well beyond the level of his thumbnail.  Dr. Zeitler suspected the mass might be malignant and abated the end of Plaintiff's thumb.  Dr. Zeitler sent the specimen for a pathology report, which ultimately concluded that Plaintiff had  subungual keratoancanthoma.  Sometime after the surgery, an abnormality appeared on the remainder of Plaintiff's thumb.  Plaintiff, however, has not had this new condition examined by a physician.

On July 23, 2004, Plaintiff filed a complaint alleging medical malpractice based upon two theories.  First, Plaintiff alleges medical malpractice because he argues his thumb should not have been removed because he only had a wart.  Furthermore, Plaintiff suggests the removal was done improperly because an abnormality re-grew in the end of the remaining part of his thumb. Plaintiff's second theory is that Defendant committed medical malpractice by failing to fully inform Plaintiff of the procedure.  On October 19, 2005, Defendant filed a partial motion for summary judgment on Plaintiff's first theory of recovery. Defendant acknowledges that there are factual questions which prevent summary judgment on Plaintiff's second theory.  This Court has the authority to issue a report and recommendation on Defendant's partial motion for summary pursuant to its referral order and 28 U.S.C. § 636(b)(1)(B).

**II.     SUMMARY JUDGMENT STANDARD**

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Lawson v. CSX Transp., Inc., 245 F.3d 916, 922 (7th Cir. 2001). In determining whether a genuine issue of material fact exists, this Court must construe all facts in the light most favorable to the nonmoving party as well as draw all reasonable and justifiable inferences in favor of that party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); King v. Preferred Technical Group, 166 F.3d 887, 890 (7th Cir. 1999). To overcome a motion for summary judgment, the nonmoving party cannot rest on the mere allegations or denials contained in its pleadings. Rather, the nonmoving party must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial. Celotex v. Catrett, 477 U.S. 317, 322-23 (1986); Robin v. Espo Engineering Corp., 200 F.3d 1081, 1088 (7th Cir. 2000). Where a factual record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing Bank of Ariz. v. Cities Services Co., 391 U.S. 253, 289 (1968)).

**III.    PLAINTIFF'S PRO SE STATUS DOES NOT ALLOW HIM TO CIRCUMVENT THE RULES OF CIVIL PROCEDURE**

In light of the severe consequences surrounding summary judgment, courts "must always guard against premature truncation of legitimate lawsuits merely because of unskilled presentations." Kincaid v. Vail, 969 F.2d 594, 598-99 (7th Cir.1992). Accordingly, this Court

will not hold *pro se* litigants, such as Plaintiff, to the same stringent standards as formally trained attorneys. Id. at 600.  The leeway given *pro se* litigants, however, is not an open invitation for careless litigation.

Unlike procedural hurtles, *pro se* litigants are held to the same substantive standards as other civil litigants when undergoing a motion for summary judgment. See e.g. Runnels v. Armstrong World Industries, Inc., 105 F.Supp.2d 914, 918 -919 (C.D. Ill. 2000). Thus, as the party who ultimately bears the burden of proof on a particular issue, Plaintiff may avoid summary judgment only if he affirmatively demonstrates, by specific factual allegations, that there is a genuine issue of material fact requiring a trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  Plaintiffs "should not be allowed to proceed with a case on the mere hope that trial would produce the evidence [they were] unable to garner at the stage of summary judgment." Parker v. Federal Nat'l Mortgage Ass'n, 741 F.2d 975, 980 (7th Cir. 1984). Thus, even though Plaintiff is not held to the same rigors as formally trained attorneys, summary judgment is proper if he makes no factual allegations to support his claims. See N.D. L.R. 56.1(b) ("In determining the motion for summary judgment, the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the "Statement of Genuine Issues" filed in opposition to the motion, as supported by the depositions, discovery responses, affidavits and other admissible evidence on file.").

Defendant served a three-page notice to Plaintiff on October 19, 2005, outlining the standards set forth in Lewis v. Faulkner, 689 F.2d 1000 (7th Cir. 1982) and similar cases, and informing Plaintiff of his responsibility to respond to Defendant's motion for summary judgment

4

with appropriate supporting materials. Plaintiff's response to Defendant's motion, filed on October 27, 2005, provides no facts or evidence to contradict Defendant's version of events. Defendant's facts are therefore undisputed for purposes of this motion.

### IV.   DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

   A.   Applicable Law

The Federal Tort Claims Act provides a remedy for personal injury caused by the negligent or wrongful act of any government employee acting within the scope of his employment, under circumstances where the United States, if a private person, would be liable to the claimant for the act in accordance with the law of the place where the act occurred. Accordingly, because the surgery took place in Indiana, Indiana's substantive law regarding medical malpractice applies to the present case. Massey v. United States, 312 F.3d 272, 280 (7th Cir. 2002).

Under Indiana law, in order to establish medical malpractice, a plaintiff must prove (1) a duty owed to plaintiff by defendant; (2) a breach of duty by allowing conduct to fall below the applicable standard of care; and (3) compensable injury proximately caused by defendant's breach of duty. Bader v. Johnson, 732 N.E.2d 1212, 1217 (Ind. 2000). A physician treating a patient must possess and exercise that degree of skill and care ordinarily possessed and exercised by a physician treating such maladies in the same or similar locality. Culbertson v. Mernitz, 602 N.E.2d 98, 100 (Ind. 1992). In order for a lay jury to know whether a physician complied with the legally prescribed standard of care, expert testimony is generally required. Id.

B.   Analysis

Defendant asserts that with regards to Plaintiff's first claim, Plaintiff has failed to prove, with expert testimony, that Defendant's conduct fell below the applicable standard of care. The only expert Plaintiff named was Dr. Mitcheff, an individual who treated Plaintiff for an unrelated condition at the Westville Correctional Facility. Dr. Mitcheff's deposition reveals that he does not consider himself an expert in the field of the applicable standard of care in Northern Indiana concerning an amputation of the end of the thumb. Plaintiff does not refute that Dr. Mitcheff does not consider himself an expert in this area.[2] Because Dr. Mitcheff is not a qualified expert as to the applicable standard of care, Plaintiff may not rely on his testimony to establish a breach of duty.

In addition, it appears that Plaintiff may be asserting that Defendant committed medical malpractice because a wart-like horny growth developed after the surgery. However, Plaintiff has refused to have this growth examined, nor has he provided any medical testimony tending to establish that this new growth was the result of Defendant's alleged medical malpractice. Consequently, there are no genuine issues of material fact related to this assertion. Because there is no evidence that this growth was caused by Defendant's negligence, Defendant is entitled to judgment as a matter of law on this issue.

In his response, Plaintiff relies on Dr. Ian Cook's expert report. Dr. Cook, Defendant's expert witness, asserts that "nurse practitioners without knowledge of the surgical aspects of the case inaccurately referred to the mass as a wart in the initial intake documents." (Pl. Exh. B).

---

[2] However, even if Dr. Mitcheff had considered himself an expert, he testified in his deposition that based upon common sense medical knowledge, the appropriate thing to do would be to remove the entire distal thumb. (Mitcheff Dep. pg. 11). Thus, Dr. Mitcheff's own testimony does not create a factual question as to the appropriate standard of care.

Plaintiff contends that this statement alone creates an issue of material fact.  However, what occurred by non-parties at the initial intake of Plaintiff does not create a genuine issue of fact as to Defendant's conduct at the time of the surgery.  This conclusion is supported by Dr. Cook's ultimate opinion, which Plaintiff fails to cite, which states that

> in my opinion, this degree of proliferation, and the inability to rule out malignancy without laboratory examination and supplemental histology, and the fact that prior treatments had been ineffective, made amputation necessary and appropriate.

(Pl. Exh. B).  Thus, Plaintiff's own evidence supports a finding that there are no genuine issues of material fact that Defendant's conduct fell below the applicable standard of care.

In a last attempt to avoid summary judgment, Plaintiff alleges that Defendant committed various discovery violations.  First, Plaintiff asserts that Fed. R. Civ. P. 26(2)(B) requires that Defendant get permission from both this Court and Plaintiff before deposing expert witnesses.  Rule 26(2)(B) does not contain such a requirement.  Rather, it requires parties to disclose their experts and provide expert witness reports when an expert will be used.  In regards to the expert reports, Plaintiff asserts that neither Dr. Zeitler nor Dr. Mitcheff provided expert reports.  However, because Dr. Zeitler is not a hired expert witness, no report was needed for his testimony.  In addition, Defendant was not required to provide Plaintiff with Dr. Mitcheff's expert report as Dr. Mitcheff was Plaintiff's expert witness.  Plaintiff was responsible for obtaining an expert report from Dr. Mitcheff and providing it to Defendant.

Finally, Plaintiff challenges the validity of the "one-sided" depositions which were not signed.  Pursuant to Fed. R. Civ. P. 30(e), the deponents waived signature, which meant that a signature was not necessary.  Furthermore, Defendant properly notified Plaintiff of the depositions.  Due to Plaintiff's incarceration, Plaintiff was not able to attend the depositions.

However, Plaintiff did not file any documents with this Court raising his objections. Furthermore, in accordance with Fed. R. Civ. P. 30(c), if Plaintiff was unable to attend the depositions, he could have served sealed written deposition questions on the party taking the depositions.  Plaintiff did not serve any written questions upon Defendant.  Consequently, Plaintiff's challenges to Defendant's discovery practices are without merit.[3]

In light of the undisputed facts, Plaintiff has failed to provide any evidence that Defendant breached his duty by allowing his conduct to fall below the applicable standard of care.  Consequently, as Plaintiff has failed to prove an element of his claim, Defendant should be entitled to partial summary judgment as a matter of law.

**V.   CONCLUSION**

For the aforementioned reasons, this Court **RECOMMENDS** that Defendant's motion for partial summary judgment [Doc. No. 44] on Plaintiff's claim for medical malpractice based upon Defendant's negligent amputation of Plaintiff's thumb be **GRANTED**.  As Defendant acknowledges that there is an issue of fact related to Plaintiff's claim that Defendant committed medical malpractice by failing to fully inform Plaintiff of the procedure, this matter is now ready to be set for a bench trial on this limited issue.

> **NOTICE IS HEREBY GIVEN that within ten (10) days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations.  Fed.R.Civ.P. 72(b).  FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.  See**

---

[3] Even if this Court were to strike the depositions it would have reached the same conclusion.  As it is Plaintiff's burden of proving medical malpractice, he has failed to establish an element of his claim, namely that Defendant's conduct fell below the applicable standard of care.  As previously discussed, Plaintiff did not rely upon his own "expert," but rather upon Dr. Cook, whose ultimate opinion was the Defendant acted reasonably under the circumstances.

**Thomas v. Arn**, 474 U.S. 140 (1985); **Lerro v. Quaker Oats Co.**, 84 F.3d 239 (7th Cir. 1996).

**SO ORDERED.**

Dated this 29th Day of November, 2005.

                                              s/Christopher A. Nuechterlein
                                              Christopher A. Nuechterlein
                                              United States Magistrate Judge

cc:     Harvey