UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| GEORGE H. HARVEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:04-CV-241 AS |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION ON**
**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

On April 1, 2004, Plaintiff, George Harvey ("Harvey"), proceeding *pro se*, filed a Federal Tort Claims Act against Defendant, the United States of America ("the Government"), alleging medical malpractice. Harvey alleged that the Government had committed medical malpractice by using inadequate or inappropriate procedures.  Harvey also argue that the Government failed to fully informed him of the procedure so that he could make an informed decision on whether to proceed with the procedure.

On September 19, 2005, the Government moved for partial summary judgment on Harvey's first theory of medical malpractice.  Finding that the Government did not breach its duty by allowing its conduct to fall below the applicable standard of care, on November 29, 2005, this Court recommended that the Government's motion for partial summary judgment be granted.  The court approved this Court's recommendation on January 3, 2006, and referred this matter to the undersigned to conduct an evidentiary hearing on Harvey's remaining claim and enter into the record a report and recommendation on that issue.  On March 24, 2006, pursuant to 28 U.S.C. § 636(b)(1)(B) and 636(b)(3), this Court conducted an evidentiary hearing on Harvey's claim that the Government committed medical malpractice by failing to fully inform

him of the medical procedure.  This Court now enters into the record its report and

recommendation on proposed findings of fact and conclusions of law.

## A.    FINDINGS OF FACT

The evidence that Harvey presented is relatively scarce and provides only the bare

skeleton for the events surrounding this case.  Harvey testified that on February 29, 2000, he

visited the Veteran's Affairs ("VA") Hospital seeking treatment for a re-occurring growth on the

end of his left thumb.  Harvey refers to Plaintiff's Exhibit 1 which indicates that Dr. Guo referred

Harvey to Dr. Zeitler for a wart removal.  On or around March 23, 2000, Harvey met with Dr.

Zeitler for an initial consultation.  Around May 10, 2000, Harvey returned to the VA Hospital for

a procedure with Dr. Zeitler.   Harvey asserts that he does not recall what happened that day.

However, Harvey alleges that he did not know his thumb would be partially amputated and that

his thumb is now disfigured due to this amputation.  With no cross examination by the

Government, Plaintiff rested his case after this brief recitation of the facts.

The Government's evidence provides more substance as to the events surrounding the

procedure in question.  During his March 23, 2000 consultation with Dr. Zeitler, Harvey

complained of a painful wart like lesion on his left thumb.  The medical records revealed that at

this consultation, Harvey indicated that he had tried numerous treatments, but the lesion

returned.  (Def. Exh. W).  Harvey then asserted that he wanted more aggressive treatments, even

amputation if necessary.  (Def. Exh. W).  Dr. Zeitler agreed that the best treatment at that time

would be a partial amputation of Harvey's thumb, and scheduled him for the procedure.  (Def.

Exh. A, B, & W).

On May 10, 2000, the day of the procedure, Marilyn Knueve, a registered nurse at the VA Hospital, conducted Harvey's pre-operative screening.  As part of the verification procedure, the records indicate that Ms. Knueve verified that Harvey was indeed present for an amputation of his left thumb.  (Def. Exh. K). Ms. Knueve then asked a series of questions which established that Harvey was awake, aware of his surroundings, and that his answers to the questions were appropriate.  Ms. Knueve indicated that Harvey passed all three of these threshold criteria because the records indicated that he was "oriented x3."  (Def. Exh. K). Based upon the medical records taken at the time of the procedure, Ms. Knueve testified that Harvey signed a consent form before the procedure.  (Def. Exh. K & L).  Harvey also signed the pre-op/post-op standard of care sheet in front of Ms. Knueve.  (Def. Exh. N).  If there had been any questions regarding Harvey's capacity to fully understand his surroundings or the procedure, Ms. Knueve testified that she would not have allowed Harvey to sign the forms.  Furthermore, Harvey's medical records indicate that no one ordered or administered any pre-operative medication to Harvey that may have effected his ability to fully appreciate and understand their conversations.  (Def. Exh. V).  Ms. Knueve testified that this was consistent with Dr. Zeitler's custom not to order any pre-operative medication to his patients.

In addition, Bonnie Savage, also a registered nurse at the VA Hospital, conducted alertness checks on Harvey before the surgery.  Her notes and testimony reveal that Harvey was alert and oriented before the procedure.  (Def. Exh. Q & S).  Ms. Savage also states that she had an "informed consent discussion" with Harvey.  The notes from this discussion reveal that Harvey had an opportunity to ask questions and to indicate his understanding of the discussion. The consent form that both Harvey and Ms. Savage signed (Def. Exh. T), clearly indicates that

the procedure is an amputation of the left thumb.  Furthermore, the consent form describes the treatment in laymen's terms as "cut off part or all of L thumb" and also clearly sets forth the risks associated with the procedure.  (Def. Exh. T).

Even after the surgery, Harvey did not complain about the amputation of his thumb.  For nearly six months, Harvey visited the VA Hospital for check-ups but never once mentioned that he was surprised that a portion of his thumb had been amputated.  (Def. Exh. V).  Edgar Trece, nurse manager of surgery at the VA Hospital, testified that if Harvey had made such complaints, they would have been recorded in his medical records.  However, Harvey's medical records are silent concerning any surprise he now claims regarding the partial amputation of his thumb. (Def. Exh. V).

## II.   CONCLUSIONS OF LAW

### A.    Legal Standard

To prevail on a claim for medical malpractice a plaintiff must prove (1) a  duty owed to plaintiff by defendant; (2) a breach of duty by allowing conduct to fall below the applicable standard of care; and (3) compensable injury proximately caused by defendant's breach of duty. Bader v. Johnson, 732 N.E.2d 1212, 1217 (Ind. 2000).  Indiana recognizes a physician's duty to disclose to a patient the material facts relevant to the patient's decision about the treatment.  Id. The applicable standard of care requires that a physician provide information to a patient about a contemplated procedure that will permit the patient to make a decision whether or not to have the contemplated procedure.  Bowman v. Beghin, 713 N.E.2d 913, 916 (Ind. Ct. App. 1999).  Ind. Code § 34-18-12-2 creates a rebuttable presumption that a consent is informed when a patient's

written consent is signed by the patient, witnessed by an individual at least eighteen years of age, and explained orally or in the written consent to the patient before a procedure.

B.      Defendants' Motion for Judgment on Partial Findings

At the close of Harvey's case in chief, the Government orally moved pursuant to Fed. R. Civ. P. 52(c), for a judgment on partial findings.  The Government asserts that Harvey failed to prove his case.  As previously alluded to, Harvey's only evidence was his testimony that he first saw Dr. Guo about the removal of his wart and that a month later, he met with Dr. Zeitler to discuss the removal of the wart.  Harvey alleged that he did not discuss the removal of his thumb, only the removal of the wart.  Harvey further stated that he is unsure of what happened on May 10, 2000, but he does know that his thumb is now disfigured.

While Harvey did not provide ample evidence regarding his claim, the Government declined to cross-examine Harvey, which could have made the record more complete.  As it stood at the end of Harvey's case, this Court was not satisfied that the record had been fully developed to warrant the Government's motion.  As Harvey is proceeding *pro se*, some leniency must be given to him and his ability to try to his case.  Because Harvey indicated that he thought he was only having a wart removed, this Court cannot recommend granting the Government's motion.  Therefore, this Court **RECOMMENDS** that the Government's oral motion for judgment on partial findings be **DENIED**.

C.      Analysis

While this Court recommends that the Government's oral motion at the close of Harvey's case should be denied, it does not mean that Harvey should win.  Just the opposite; Harvey has not met his burden of proving that he did not have informed consent before participating in the

5

procedure.  First, the evidence reveals that it was Harvey who indicated to Dr. Zeitler that Harvey had unsuccessfully tried other treatments on his thumb and it was Harvey who suggested that he wanted a more aggressive treatment for his thumb, including amputation.  After the initial consultation, Dr. Zeitler recommended partial amputation of Harvey's thumb.  None of the medical records support Harvey's theory that he would only be treated for the removal of a wart.  Rather, all the medical records support the Government's contention that Harvey was aware that the amputation of his thumb, and not the mere removal of a wart, was the prescribed course of treatment.

Furthermore, and perhaps the evidence most damaging to Harvey's case, is that on May 10, 2000, the day of the procedure, Harvey signed a consent form.  Under Ind. Code § 34-18-12-2, this consent form, which the testimony illustrated was explained to Harvey before he signed it, creates a rebuttable presumption that the consent was informed.  Harvey has provided absolutely no testimony or evidence to rebut this presumption.  Rather, the Government has bolstered the credibility of the signed consent form by showing documentation that Harvey was alert and oriented before the procedure when the nurses were obtaining his signature on the informed consent document.  Harvey was not administered any pre-operative medication which may have affected his ability to fully understand the procedure or the documents he was signing.  In addition, the consent form stated in laymen's terms that the procedure involves cutting off part or all of Harvey's left thumb.  This document could not have made it any clearer to Harvey that part of his thumb would be removed.  As Harvey was alert, coherent, and had the opportunity to ask any questions, if he was unaware that the procedure involved cutting off part of his thumb, this document would have clarified any confusion.

6

Finally, even after the surgery, Harvey did not seem surprised or concerned that his thumb had been partially amputated.  If Harvey was as surprised as he now alleges, he would have made some comment to the treating physician on subsequent visits.  Yet, no complaints were recorded in Harvey's medical records.

Therefore, after examining all of the evidence, it becomes clear that the Government did not breach its duty of care because it fully informed Harvey of the procedure and its risks. Through both the initial consultations and the consultations before the procedure, Harvey had the opportunity to fully appreciate the procedure and make an intelligent decision on whether to proceed with the amputation. He intelligently and willfully chose to proceed with the amputation when he signed the informed consent document.  Consequently, this Court **RECOMMENDS** that judgment be entered in favor of the Government and against Harvey.

### III.    CONCLUSION

For the aforementioned reasons, this Court **RECOMMENDS** that the Government's oral motion for judgment on partial findings be **DENIED**.  This Court further **RECOMMENDS** that judgment be entered in favor of the Government and against Harvey.

**NOTICE IS HEREBY GIVEN that within ten (10) days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations.  Fed.R.Civ.P. 72(b).  FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.**

**SO ORDERED.**

Dated this 29th Day of March, 2006.

S/Christopher A. Nuechterlein
Christopher A. Nuechterlein
United States Magistrate Judge

cc:     Harvey

7